## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DAVID BEAVERS,

      Plaintiff,

      v.

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF
SOCIAL SECURITY,[1]

      Defendant.

CIVIL ACTION NO. 3:20-cv-01415

(SAPORITO, M.J.)

## **MEMORANDUM**

In this matter, the plaintiff, David Beavers, seeks judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security n July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. See Fed. R. Civ. P. 25(d); see also 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

R. Civ. P. 73.

## I.   BACKGROUND

On May 23, 2018, Beavers protectively filed claims for disability insurance benefits and supplemental security income, both asserting a disability onset date of April 10, 2018. Both claims were initially denied by state agency reviewers on November 5, 2018. The plaintiff then requested an administrative hearing.

A video hearing was subsequently held on September 16, 2019, before an administrative law judge, Frank Barletta (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Tanja H. Hubacker (the "VE"). The plaintiff was represented by counsel at the hearing.

On July 30, 2019, the ALJ denied Beavers's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Beavers was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Beavers had not engaged in substantial gainful activity since his alleged disability onset date. At step

two, the ALJ found that Beavers had the severe impairments of: a neurocognitive disorder due to traumatic brain injury, fractures of the skull and facial bones, myocardial infarction, atherosclerotic heart disease, heart failure, mixed conductive and sensorineural hearing loss of both ears, alcohol abuse, anxiety, depression, and an adjustment disorder with mixed anxiety and depressed mood. At step three, the ALJ found that Beavers did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Beavers's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Beavers had the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[2] with the following limitations:

> [Beavers] could frequently climb ramps and stairs, but never ladders, ropes, and scaffolds; could frequently balance, stoop, kneel, and crouch; could occasionally

---

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *id.* § 416.967(b).

crawl; could perform jobs that require no more than occasional hearing ability (due to his limited hearing); must avoid even moderate exposure to hazards; must avoid noise above a moderate level; would be limited to unskilled work, involving only simple tasks that are not performed in a fast-paced production environment; would be limited to low-stress occupations with only occasional simple decision-making and only occasional changes in work duties or work setting; and could have only occasional interaction with coworkers, supervisors, and the public.

(Tr. 19).

In making these factual findings regarding Beavers's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304. The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, based on this RFC and on testimony by the VE, the ALJ concluded that Beavers was unable to perform his past relevant work as an electrician. Based on the testimony by the VE, however, the ALJ determined there were jobs that existed in substantial numbers in

the national economy that Beavers could perform, such as a router (DOT# 222.587-038) and a non-postal mail clerk (DOT# 209.687-026). Based on this finding, the ALJ concluded that Beavers was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on July 9, 2020, making the ALJ's July 2019 decision the final decision of the Commissioner subject to judicial review by this court.

Beavers timely filed his complaint in this court on August 11, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II. DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security

disability insurance benefits and supplemental security income administrative decisions).

Beavers asserts on appeal that the ALJ erroneously found that the evidence of record was insufficient to establish that he could not engage in substantial gainful activity. (Doc. 16, at 5). This is because, according to Beavers, the ALJ's findings were irrational, were not based on the substantial competent evidence of record and were not in accord with applicable case law. *Id.*

**A. The ALJ's Step 3 Determinations**

Beavers argues that the evidence in the record documents per se disabling hearing loss. (Doc. 16, at 5). More specifically, Beavers contends that his hearing impairment satisfies Listing 2.10, Hearing Loss Not Treated with Cochlear Implantation. *Id.* at 6. He further asserts the records also establish the equivalency of listing 2.07. *Id.* In addition to his hearing loss, Beavers claims that his brain injury satisfies Listing 11.18. *Id* at 7. Lastly, Beavers argues that his cardiac condition satisfied Listing 4.04. *Id.* at 9. Because the ALJ did not find that any of these conditions constituted a listed impairment, Beavers claims, the ALJ's decision is not supported by substantial evidence. *Id.* at 6.

At Step 3 of this sequential analysis, the ALJ is required to determine whether, singly or in combination, a claimant's ailments and impairments are so severe that they are per se disabling and entitle the claimant to benefits. As part of this Step 3 disability evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments, commonly referred to as listings, that are acknowledged as so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; *Burnett v. Comm's of Soc. Sec. Admin.,* 220 F.3d 112, 119 (2000).

In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled per se and is awarded benefits. 20 C.F.R. §416.920(d); *Burnett*, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531

(1990) (citing 20 C.F.R. §416.920(d); SSR 83-19 at 91). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. *Id*.

The determination of whether a claimant meets or equals a listing is a medical one. To be found disabled under Step 3, a claimant must present medical evidence or a medical opinion that his or her impairment meets or equals a listing. An ALJ is not required to accept a physician's opinion when that opinion is not supported by the objective medical evidence in the record. *Maddox v. Heckler*, 619 F. Supp.  930, 935-936 (D.C. Okl. 1984); *Carolyn A. Kubitschek & Jon C. Dubin*, Social Security Disability Law and Procedure in Federal Courts, § 3:22 (2014). However, it is the responsibility of the ALJ to identify the relevant listed impairments, because it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Burnett*, 220 F.3d at 120 n.2.

On this score, however, it is also clearly established that the ALJ's treatment of this issue must go beyond a summary conclusion, since a bare conclusion "is beyond meaningful judicial review." *Id*. 220 F.3d at 119. Thus, case law "does not require the ALJ to use particular language

or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). This goal is met when the ALJ's decision, "read as a whole," *id.*, permits a meaningful review of the ALJ's Step 3 analysis. However, when "the ALJ's conclusory statement [at Step 3] is . . . beyond meaningful judicial review," a remand is required to adequately articulate the reasons for rejecting the claim at this potentially outcome-determinative stage. *Burnett*, 220 F.3d at 119.

### 1. Listing 2.10

Beavers first argues his hearing impairment satisfies Listing 2.10 (Hearing Loss Not Treated with Cochlear Implantation). (Doc. 16, at 6). Listing 2.10 requires the following to be met: (A) an average air conduction hearing threshold of 90 decibels or greater in the better ear *and* an average bone conduction hearing threshold of 60 decibels or greater in the better ear; *or* (B) a word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 2.10.

The ALJ reasonably concluded Beavers's hearing loss did not satisfy Listing 2.10. The ALJ reasoned the record did not contain objective evidence and testing results necessary to satisfy listing-level criteria. (Tr. 15). Furthermore, the ALJ determined that Beavers had "clearly demonstrated that he was able to hear by providing responsive, relevant, and coherent answers at the hearing." *Id.*

Beavers had the burden to demonstrate his hearing impairment met or medically equaled a listed impairment. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *see also Bryan v. Saul*, 2021 WL 707594, at *14 (S.D. Fl. Feb. 6, 2021) (upholding ALJ's conclusion claimant did not satisfy Listing 2.10 where he relied on lack of test results demonstrating the listing's criteria and claimant's ability to understand during an interview). Beavers also claimed that his air and bone conduction hearing thresholds satisfied Listing 2.10A but cited no pages of the record to support this. (Doc. 16, at 6). In our review of the record, we find only one test result, which clearly satisfies neither A nor B criteria for Listing 2.10. (*See* Tr. 1845.)

Accordingly, we find the ALJ's determination of Beavers's hearing impairment regarding Listing 2.10 is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 2. Listing 2.07

Beavers also claims his hearing impairment satisfies Listing 2.07 (Disturbance of labyrinthine-vestibular function [including Meniere's disease], characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing). (Doc. 16, at 6). This listing requires both: (1) a disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and (2) hearing loss established by audiometry. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 2.07.

Beavers does not cite to any evidence to support his claim, nor does the record appear to contain any evidence that would satisfy the diagnostic criteria of the listing. Regardless, this Court has no obligation to search through the record to locate evidence on a claimant's behalf or to flesh out a claimant's arguments. *See Atkins v. Comm'r Soc. Sec.*, 810 Fed. App'x 122, 129 (3d Cir. 2020) (citing *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)).

Accordingly, we find the ALJ's determination of Beavers's hearing impairment regarding Listing 2.07 is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 3. Listing 11.18

Beavers also argues that his brain injury satisfies Listing 11.18 (Traumatic brain injury). (Doc. 16, at 7). To meet Listing 11.18, a claimant must have:

> A. Disorganization of motor function in two extremities…resulting in an extreme limitation…in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the injury [].
>
> OR
>
> B. [A] Marked limitation…in physical functioning…and in one of the following areas of mental functioning, persisting for at least 3 consecutive months after the injury:
>> 1. Understanding, remembering, or applying information…or
>> 2. Interacting with others…or
>> 3. Concentrating, persisting, or maintaining pace…or
>> 4. Adapting or managing oneself

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11.18 (citations omitted).

Beavers invokes Paragraph A, and we find that Beavers's argument

is without merit. Beavers claims he cannot balance, and that this constitutes major disorganization of motor function in his legs. (Doc. 16, at 7). It is true that Beavers was observed to be unable to walk when hospitalized in September 2017. (Tr. 537). Also, he indicated to Dr. Stone that he had balance issues. (Tr. 1809).

Ultimately, however, the record reflects less than an "extreme limitation" in Beavers's ability to balance. For example, he walked for exercise and was often observed with a normal gait without use of an assistive device. (Tr. 796-97, 799, 802, 1713, 1742, 1798, 1809-11). Additionally, Dr. Stone actually noted Beavers merely had "poor" balance, rather than an actual inability to do so. (Tr. 1814).

Thus, we find the ALJ's determination of Beavers's brain injury as it pertains to Listing 11.18 is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 4. Listing 4.04

Beavers also briefly asserts that the ALJ failed to address any physical limitations to account for his cardiac impairment. (Doc. 16, at 9). To the contrary, the ALJ thoroughly addressed each criterion of the cardiac listings and found the evidence did not satisfy the requirements

of Listing 4.04. (Tr. 16-17). Still, the ALJ accounted for Beavers's heart disease in his RFC assessment by limiting him to light work (Tr. 19).

In doing so, the ALJ discussed Dr. Stone's opinion that Beavers could lift and carry up to 100 pounds occasionally and 50 pounds frequently. (Tr. 21-22). The ALJ found the opinion unpersuasive, believing that Dr. Stone overestimated Beavers's functional abilities. (Tr. 22). The ALJ acknowledged, however, that the records indicated Beavers had some periods of increased symptomatology and that he retained a degree of restriction due to his traumatic brain injury and heart issues. *Id.* He determined from this that Dr. Stone's opinion, which suggested a greater RFC than medium, was unpersuasive given that Beavers's signs, symptoms, and RFC were more consistent with an individual who retains a light RFC. (Tr. 21-22).

The ALJ found persuasive the opinion of Dr. Bart, who opined that Beavers had the capacity for light work. (Tr. 23). The ALJ stated that Dr. Bart's opinion was supported by Beavers's daily activities, such as performing household chores, attending to his personal care needs, mowing the lawn, and preparing simple meals. (Tr. 23). The ALJ also noted that the objective examination findings in the record supported a

light RFC. *Id.* For example, Beavers reported no upper or lower extremity numbness, tingling, weakness or pain; and physical examinations reflected normal strength, bulk, and tone; intact coordination; normal sensation; a normal gait; a negative straight-leg raising test; a full squat; no joint abnormalities; normal range of motion; no extremity edema; no muscle atrophy; intact hand and finger dexterity; 5/5 grip strength; and the ability to walk on his heels and toes without difficulty. (Tr. 797-802, 1742, 1750-51, 1798, 1811-12, 1819-22).

Accordingly, we find the ALJ's evaluation of Beavers's cardiac condition under listing 4.04 is supported by substantial evidence and it was reached based upon a correct application of the relevant law.

## B. Evaluation of Medical Opinions

Beavers further contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.

1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, Beavers originally filed his administrative claim for benefits in May 2018. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined

to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a),

416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability), and *id.* §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency), *with id.* §§ 404.1527(c)(3), 416.927(c)(3) (supportability), and *id.* §§ 404.1527(c)(4), 416.927(c)(4) (consistency).[3] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Densberger*, 2021 1172982, at

---

[3] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

*8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

Here, the ALJ evaluated Dr. Ziba Monfared's opinions properly and in compliance with the new regulatory scheme. Dr. Monfared opined that Beavers could not hear, understand simple instructions, communicate simple information, or use a telephone. (Tr. 22, 1836-43). The ALJ found this opinion unpersuasive and explained his reasoning. The ALJ discussed that Dr. Monfared's opinion appeared to exaggerate Beavers's degree of limitation. (Tr. 22). For example, Beavers was able to respond to questions posed to him by both the ALJ and his representative with clear, cogent, and responsive answers. *Id.* To the ALJ, this ability discredited Dr. Monfared's suggested limitations. *Id.* Additionally, the

ALJ found Beavers's testimony that he could talk on a telephone to directly contradict Dr. Monfared's opinion that he could not. (Tr. 22, 1842). Still, the ALJ acknowledged Beavers's hearing difficulty by limiting him to no more than moderate noise in his RFC assessment (Tr. 19).

The ALJ also properly evaluated the opinion of Dr. Jennifer Betts, Psy.D. Dr. Betts opined that Beavers had an extreme limitation responding appropriately to usual work settings and changes in a routine work setting, finding only a moderate limitation in those areas. (Tr. 19, 22, 1831-32). The ALJ found this opinion unpersuasive and explained his reasoning. The ALJ found that Dr. Betts's assessed marked and extreme limitations overestimated Beavers's actual degree of limitation. (Tr. 22). He noted that, although Beavers had some periods of increased symptoms, overall, his examinations were more consistent with mild to moderate symptoms. *Id.* The ALJ explained that Dr. Betts's opinion of extreme limitations was inconsistent with her own examination. *Id.* For example, other than some impaired recent and remote memory, Beavers's mental status examination was unremarkable. *Id.* Beavers's ability to complete some household tasks and address his personal care

needs were consistent with the objective evidence showing no more than mild to moderate symptoms. *Id.*

Beavers further argues the ALJ erroneously found the opinion of Dawn Long, Psy.D., the state agency psychologist, more persuasive than the opinion of Dr. Betts. However, the ALJ appropriately evaluated the opinion of Dr. Long and explained why he found it persuasive. Dr. Long reviewed Beavers's records and opined that Beavers could understand, remember, and carry out simple instructions (i.e., one and two-step tasks); make simple decisions; perform simple, routine, repetitive tasks in a stable environment; interact appropriately with the public; and get along with others in the workplace. (Tr. 22, 109). The ALJ explained that he found Dr. Long's opinion persuasive because it was consistent with the psychological evidence in the record, including mental status findings. (Tr. 23, 1827-28, 1831). Furthermore, the ALJ determined that Beavers's documented focus, concentration, and cognition difficulties supported the limitations to unskilled work. (Tr. 23). The opinions of state agency medical consultants "merit significant consideration." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). As

such, the ALJ appropriately determined that Dr. Long's opinion was more persuasive than the opinion of Dr. Betts.

In essence, Beavers argues we should re-weigh evidence and resolve evidentiary conflicts in his favor. However, it is not the role of this Court to substitute its judgment for that of the ALJ. *See* Social Security Act, § 205(g), 42 U.S.C.A. § 405(g). The standard here is substantial evidence, which is deferential to the judgment of the ALJ. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The ALJ's duty is to weigh the evidence and resolve conflicts. *See Richardson v. Perales*, 402 U.S. 389, 410 (1971) (clarifying that when the record contains conflicting medical evidence, the ALJ must weigh that evidence and resolve the conflict); *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted) (explaining that an ALJ may weigh the credibility of the evidence).

Accordingly, we find the ALJ's evaluations of the medical opinions of record are supported by substantial evidence and were reached based upon a correct application of the relevant law.

### III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Beavers was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.


Dated: March 31, 2022                    ___**s/Joseph F. Saporito, Jr.**___
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge